Good morning. May it please the Court, I'm Megan O'Carroll of the California Attorney General's Office and I represent Defendants Rosario and Mandeville in this case. I'd like to reserve four minutes for rebuttal. Contraband watch procedures have been an accepted practice in prisons throughout the circuit for decades. To date, when prison officials are faced with the risk that an inmate is harboring drugs in his body, they have to make the choice between either the intensive surveillance or permitting the suspected smuggler to pass the drugs into the institution. And they have not had the guidance of any decision from a court in this circuit or any other, to my knowledge, as to what conditions are warranted during such a surveillance or what kind of processes do. And therefore, Defendants ask the Court to extend qualified immunity to them on both the Eighth and the Fourteenth Amendment claims. Kagan You can't mean that anything they do in that context is okay. Anything that the prison officials would do during a contraband watch, you're saying, would not be okay. Right. Right. Kagan You can't say anything they're doing is okay or entitled to qualified immunity. That – exactly, Your Honor. I'm not saying that there has to be a specific case that directs prison officials on contraband watch as to exactly what they must do in each and every situation in order for them to be on fair notice. I would, however, say in this case that the district court's finding that Defendants Rosario and Mandeville had fair notice or that their conduct was unreasonable was not clearly established, and therefore, we're asking the Court to reverse their decision. Specifically, the court below held that Defendants Rosario and Mandeville, as supervisory personnel, were responsible for the contraband watch policy at this particular prison in California in 2002. And specifically, they were aware of two of the conditions, the constant illumination and the lack of a mattress. And they were aware of that, and the Court concluded that because they knew this was occurring, they were responsible for that policy. And Plaintiff Chappell, who had alleged that he was psychologically harmed by this in terms of being denied adequate sleep, that Defendants were not entitled to qualified immunity because the law has to go to two issues. How long was he on the contraband watch? Six-and-a-half days, Your Honor. Okay. And is that a standard period provided by regulation or? The regulation provides that the contraband watch is self-limited as to duration, in that it shall take as long as it takes for three bowel movements. In this particular case, that was six-and-a-half days. It could be slightly longer or shorter. If he was, in fact, deprived of sleep for six or seven days, would that not at least Well, first of all, would that be unconstitutional cruel and unusual punishment? If the Court were to determine that that was cruel and unusual punishment, that would be. I'm asking here whether it was. Would it be cruel and unusual punishment if the combination of conditions that he was subjected to made it impossible for a reasonable person to sleep for six or seven days? Yes, Your Honor. The Court below correctly noted that sleep is a fundamental human right. You cannot deprive an inmate of sleep. But what we're saying is that that is not the actual question on appeal and not the relevant question for the qualified immunity analysis. So you're saying that even if it was unconstitutional and everybody would – and it's a fundamental right and it would be – nonetheless, it would – they'd be – the defendants would be entitled to qualified immunity? Yes. Even if, in fact, he could establish a trial that under these circumstances he couldn't sleep at all for six or seven days? That's true, Your Honor. And the reason for that is that the level of generality at which the qualified immunity analysis takes place is crucial to providing fair notice. If you term the constitutional principles so broadly, then it terms what the Supreme Court said. But wouldn't you at that point have a case similar to the Hope case where the person was chained to a stake and you say you don't have to ask any questions, people just obviously know that not letting somebody sleep for six or seven days is cruel and unusual punishment, period, the end? The crucial difference between Hope and this case is that that case was a strictly punitive measure. They literally pilloried that inmate for no other purpose than to humiliate him. But cruel and unusual punishment is about punishment. That's not what this case was about. This case was about trying to get contraband that was secreted in a human body. And what kinds of cases –     Kagan. Kagan. Well, that's fine. I understand that. But the question is still, is it cruel and unusual punishment in the context of doing that to make set conditions such that the person is deprived of sleep for six or seven days, and you said yes? That does not defeat qualified immunity, Your Honor, because it's too broad of a question for the correct qualified immunity analysis in this case. As the Supreme Court noted in Anderson, you can convert qualified immunity into a principle of unqualified liability simply by phrasing the constitutional question so broadly. The correct constitutional question in this case is not, would – is it acceptable under the Eighth Amendment to deprive inmates of sleep? Of course, obviously, the answer to that is no. It's why I answered your question no. The correct inquiry for qualified immunity analysis in this case is, when prison officials are faced with an inmate whom they believe to be harboring drugs in his sleep, they are prohibited under the Eighth Amendment. And in this case, not only was there no guidance for the officials in this stage to know that lighting and lack of a mattress would be inappropriate, it also was not clearly unreasonable because they were acting in a good-faith effort to maintain institutional discipline. Roberts. Alitos, is there any reason that Mr. Chappelle had to be deprived of sleep in order to induce his bodily functions to excrete whatever drugs he may have ingested? You mean, was there some other reason? Is there a penological reason? Is there any kind of administrative reason that you would want to deprive Mr. Chappelle of sleep? I mean, it seems to me that the – that sleep would – that sleep helps the bodily function – helps the body function in its natural way, and that the prison would actually have some interest in having him sleep on whatever normal schedule he would. Now, you had lights, you had 24-hour lights in his cell. Does the record tell us how bright those lights were? The record is not clear as to whether the lights were any different than the normal lights. Okay. But in normal lighting, you don't – when you say normal lighting, do we normally have other cells illuminated 24 hours a day? My understanding, and I don't think this is in the record, but just experience with prisons generally, is that the lights can be dimmed in normal prison cells. Okay. Were they dimmed here? Because I didn't see anything in the record that suggested anything was dimmed here. So if you've got lights that are on during the day elsewhere, but in his cell are illuminated 24 hours a day, wouldn't that be relevant? I'm not sure I entirely understand the question. Okay. You have – ordinarily in the cells, we would have light during – you have some lights that might be on during the day. Those lights can be dimmed at night so that the prisoners can sleep, right? Yes. Okay. In Mr. Chappelle's case, were the lights dimmed at night? My understanding is that they were not. Okay. That was my understanding as well. Okay. Were the lights then illuminated at the same level that we would have had them during the day? That is my understanding of this case. Okay. And we don't have any idea how strong those lights would and were and whether some – anybody could be expected to sleep if the lights were on 24 hours a day. Well, the regulations simply stated, and the regulations is what the district court held the defendants were responsible for, was that the lights shall remain on and an officer shall be seated there to watch the cell and to have constant observation. So the purpose of the lighting, I'm not sure if there was any thought behind whether or not it would affect his bodily functions in any other way, but the purpose behind the statute is clearly that the officer present there would be able to maintain constant observation. All right. But don't we have a case, Keenan, fairly directly on point about the lighting? That is true, Your Honor, and that is the case that the district court relied on. But again, the problem there was that the court was applying principles, broad principles of general prison conditions to a very unusual and different situation that we had here. Plaintiff has urged the court to take the case of Keenan v. Hall to stand for the proposition that if an inmate passes 24 hours of dark – without darkness, that regardless of the police – Well, that's the way you're standing it. I mean, in fact, there are, as you point out, a number of district court cases which have not followed Keenan, but they've all been very clear that we're talking about dimmed lights. Yes. Well, again, the reason for the contraband watch procedures was to maintain constant observation. The only district court cases that have considered that, and there are no circuit court cases, have all determined that that was acceptable. If the court – What was acceptable? Dimmed lights. No, constant, though general lighting. No, I didn't see one like that. Which case was that? As far as I could tell, all of them were talking. They talked very specifically about the fact that this was a tenement to a night light. The three cases that I'm referring to in which the courts have held that contraband watch procedures were accepted practices were the district court cases of Meraz v. Rapone, Stull v. Granis, and then the underlying – not the Ninth Circuit, but the district court case in Blodgett v. Mendoza. And specifically, the case of Stull v. Granis took place at the same prison, and I think even two years earlier than Plaintiff Chappelle's contraband watch. So the conditions would have been exactly the same. And the other thing is that the case of Keenan v. Hall, when it referred to the constant illumination, it actually cited the case – it relied on the case of Lemaire v. Moss, which noted that the reason it was saying that constant illumination is not acceptable is because there's no penological reason for it. It even went so far as to point out that there was no evidence in the record in the case of the inmate at all times. But it's undisputed in this case that that's exactly what occurred and that that was the reason for the lighting. Therefore, Keenan v. Hall is not applicable and did not put the defendants on fair notice. The same is true of the mattress issue. In fact, as the district court in this case noted, there really is no clear guidance. They pointed that out on footnote of the findings and recommendations. Kagan, you keep saying with respect to the mattress that the reason for it was that he couldn't – so he couldn't hide something in a mattress. But obviously, people go camping all the time with pads that don't have covers on them, so it's just illogical. With – go camping with pants that don't have covers? Pads, P-A-D-S. Oh. Well, actually, the inmate was provided a blanket in this case which he was able to fold and put on the bed frame as a mattress alternative. And in fact, a case cited by Plaintiff points out that that does comport with Eighth Amendment principles. The courts have found that that does. As a cover, as a blanket. As what they called – they referred to it as a mattress alternative, basically something soft to put on the bed. And Plaintiff – Well, was the bed solid? Was it – did it have springs? Was it – what was it? My understanding is that it was a plain bed frame, and then the blanket can be placed on it. I guess I don't know what a plain bed frame is. I thought it was an iron slab, was my impression. Solid slab like solid slab of iron. Slab like solid, yes, Your Honor. Nobody's bouncing on the beds here in the cell. I don't believe so. As to the – Plus, he also had his hands in shackle. In other words, there were other conditions also that would have impaired sleep. There were, Your Honor. Why doesn't it just make a lot more sense? This is a summary judgment. Why doesn't it make a lot more sense in this case to have a trial and find out exactly what happened and apply? I understand that qualified immunity usually applies at the front end, but not always. And if we can't – until we know the details here, it seems to me it's very difficult to tell, even not only whether it's unconstitutional, but what the qualified immunity result would be. Well, appellate jurisdiction is appropriate here because there is no dispute as to the specific facts that are required for the qualified immunity analysis, meaning that defendants in this case were supervisory personnel. So what the district court was looking on was the policy, not the fact that the defendant was in the darkness of the light, essentially, that the conditions were such that he couldn't sleep. That's exactly the issue on appeal as the district court framed it, and not been – there's been no other issue raised here. If the Court is interested in the counsel before you leave that point, did this man claim that he was not able to sleep? Yes, Your Honor. Where did he claim that? Well, the – I can cite you to where the district court determined what his allegation was. I don't care what the – I guess I care, but I'm more concerned with the record. Is there some place in the record where I can see that this man claimed he was not able to sleep? Yes, Your Honor. The complaint is amongst the defendant's excerpts of records, and there is actually – I can see it on my mind – a page where he says that the combined conditions prevented him from obtaining sleep and caused him psychological deprivation. I can't find that. Perhaps I can just say that at the very end. All right. I recall a general claim that he was unable to sleep and had psychological problems. Do you take that to mean that he was saying that he couldn't sleep at all the whole seven – the whole six and a half days? You know, I'm not sure, and I don't believe the record is clear as to whether he claims he never slept once in six and a half days. The district court, however, noted that this was not an issue as to the tight shackling or restraint because Plaintiff did not allege that he had any physical harm. All he alleged was mental harm, and it was from sleep deprivation. The district court – that's why I determined the motion for summary judgment as it did on strictly the issue of the lighting and mattress. All right. There was a summary judgment proceeding. Did he file an affidavit in which he set forth the facts he was relying on? He did. He filed an opposition pro se, and he – I'm not sure whether – I believe that the court in its findings and recommendations relied for his allegation of psychological harm on the allegations of the complaint. But there were also depositions of him. There was a deposition, and that, too, is in the record, but it was strictly that issue. I'm going to ask the same question of his counsel. Thank you. But, counsel, we don't – we still don't have anything. Before you leave, we still – I want to circle back to a question I asked you earlier. Is there anything in the record that tells us how bright these lights were or how many of them there were? Do we know how many bulbs there were in the cell, whether these were fluorescent lights, whether we had two tubes or four tubes, whether that's the same as in other places in the prison? We do not know those factual specifics. But wouldn't that be useful? It would be useful in determining the constitutional question of what kind of lighting is proper. All I would say is that if the court is inclined to do so, that that decision should apply prospectively only, and defendants should be granted all of them. But wouldn't it be useful if – to know if the lighting had been doubled or tripled here, what it was in any place else in the prison? I can only assume, based on the description of the policy, when it says the lights are to remain on, that it means that whatever lighting is normally able to be turned on will be on. In other words, nothing extra or different. We did have some discovery conducted in this case? There was discovery, yes. Nobody asked those questions? No, Your Honor. Okay. But if it says the lights will be on, it means that you take that to mean and I would take that to mean the daytime lights, the ordinary lights. The ordinary normal lights that would be on during the day. Yes, Your Honor. Thank you. Your point, counsel, is it doesn't make any difference that the lights were on, the ordinary lights were on, that they were on for a specific penalogical reason in this case, and that those reasons didn't exist in other cases, therefore, the law was not completely – was not clearly established.  Thank you, Your Honor. Okay. Thank you very much. Counsel. Good morning, Your Honors. May it please the Court. Amanda Mogadom, Southwestern Law School, under the supervision of Caleb Mason, on behalf of Mr. Rex Chappell, by appointment of the Court. Your Honors, the injury here is sleep deprivation. The correct constitutional question is not whether officials can conduct contraband watch. It's about how they conduct contraband watch. And in Keenan v. Hall, this Court stated, quote, There is no legitimate penological justification for causing an inmate to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional. During Chappell's entire six-night, seven-day contraband watch, he – there was, quote, a very bright light on 24 hours a day. Chappell was handcuffed. His handcuffs were attached tightly to a waist chain. Now, just one moment, Counsel. The rule that you just stated came from a case in which there was no penological justification offered. Am I correct? Yes, Your Honor. So the rule of that case is if there is no penological justification, then this is cruel and unusual punishment. No, Your Honor. But what about the case in which there is a penological justification? Do you have any such holding in a case like that? Well, Your Honor, in this case, like in Keenan, there is no penological justification because Keenan does not state that sleep deprivation is constitutional if you want to look in on an inmate for 24 hours a day. Precisely, Your Honor, the claim is that sleep deprivation does not have a penological justification. Now, that wasn't before the Court, was it? Because there wasn't any justification offered at all in that case, was there? Your Honor, the question specifically as to the sleep deprivation that the Court had to decide was that there's no penological justification, period, for sleep deprivation. How could they make that ruling in a case in which no penological justification was offered? It would be mere dicta, wouldn't it? No, Your Honor. That's the rule of law from Keenan, is that there is no penological justification for sleep deprivation. But it's very clear that district courts have distinguished Keenan. So obviously, at least there's been some confusion in the district courts as to the strictness of the Keenan rule. Yes, there has no, Your Honor, Keenan applies to cases of sleep deprivation. And here, what Chappelle has alleged is that But there are district courts that have dealt with questions of sleep deprivation who have construed Keenan not to apply in their cases. So there's evidently been at least some confusion in the district courts over how far the Keenan rule applies. Your Honor, most of the district courts applying Keenan have dealt with the dim-level lighting cases that Your Honors were speaking of earlier. And precisely in those cases, the lights were dimmed or the inmates did not allege physical or psychological harm. Here, Chappelle In those cases, as I recall, and a lot of them, it was said that the Petitioners were allowed to cover their eyes as well. Yes, Your Honor. And precisely because of the shackling here, when Chappelle's hands were handcuffed to his waist chain, he stated that they did not loosen his chains for any reason, let alone to let him eat his food or to cover his eyes from the lights, even with his arm that were on for 24 hours a day. And applying the Keenan law to this case, that shows the specific harm alleged to your sleep deprivation and the mental state for examining that is deliberate indifference. Similarly, with regard to the notion that he could have put a mattress on his bed, how would he have done that if he couldn't use his hands? I could have put the blanket on his bed. Yes, Your Honor. There's nothing in the record as to what he could have done with the blanket. He does state that his hands were continuously shackled and that he had to take, quote, baby steps around the cell. But his hands were not, he was not able to move them. He said he had to eat his food, quote, like a dog with his face down because of the constant shackling. On the question of deliberate indifference, that means precisely whether a reasonable person would know that these conditions could cause sleep deprivation and human beings need to sleep every day. Here, Chappelle could not sleep for nearly a week. Let me just ask you this. With regard to that statement, where in the record can we find some evidence that was submitted about the nature of his sleep deprivation? Do we have a deposition in which he described it? Do we have answers to interrogatories or an affidavit in which he says what this is, what the nature of this sleep deprivation actually was? Your Honor, precisely we have his complaint on page 159 of the record. He stated, after describing these conditions, that he had to, quote, attempt to sleep this way, and that he was deteriorating mentally from these conditions. Now, construing his pro se complaint Now, does he ever say he was unable to sleep? He said he had to attempt to sleep. Correct, Your Honor. That's the record that we have before us, but this creates a genuine issue of material fact as to whether he was deprived of sleep, and the State will be free to challenge that at trial. However, construing his complaint liberally and these factual inferences in his favor at this summary judgment stage, there is a genuine issue of material fact as to whether he was deprived of sleep. Sleep is a constitutional right, and therefore, this case must go to trial. So your answer to my question is it's in the complaint, and that's the only place I need to look. Correct, Your Honor. Okay. Thank you. Under the State's theory, sleep deprivation would never violate the Eighth Amendment if the purpose of the watch is observation, but the Constitution commands more of this. In looking at an Eighth Amendment violation or alleged violation, this Court looks at both the severity and the duration of the deprivation. Six days of sleep deprivation is certainly more severe than six days of deprivation of reading materials or soap. Specifically here, because of the constant shackling, Chappelle was left defenseless against the lights that were on for 24 hours a day. Do you agree with the State that there's no evidence in the record about the level of lighting in the cell? I disagree as specifically that we have Chappelle's allegations that it was a very bright light that was on 24 hours a day. Well, I didn't even understand her to be saying that, because she did say that the regulation or the policy said it was the same light that was otherwise on. So we know that it was not a dimmed night light. Correct, Your Honor. There's no dispute that it wasn't dimmed. The cell's regular daytime light that was on. We don't know exactly how bright it was, but we know that it was not a light designed for sleep. It was designed for daytime illumination. Correct, Your Honor. And the State would be welcome again at trial to put on what the level of lighting was. However, at this time, we know that it was the same light that was on for 24 hours a day. Are there any district court – I was a little confused by her answer and also by yours. Are there any district court cases that distinguish Keenan in a situation in which there is full-time regular lighting? That say specific – the only cases deal with the dimming of the lights. So in those cases, the lights were dimmed. That was my impression. They all specifically talk about something like a 7-watt fluorescent bulb or something. And they say it's like a night light. Correct, Your Honor. There would be some measures taken where there wasn't deliberate indifference to the sleep deprivation claim, but here there were none. Were there – was represented there are cases specifically upholding these contraband watch regulations. Are there? The State referred to two cases, Stolvi-Granis – excuse me – specifically to Stolvi-Granis and Meraz v. Vepond. The cases cited by the State arguing that contraband watch does not give rise to due process protections do not stand for those – that proposition cited. There is and could not be a general rule about contraband watch specifically not giving rise to any Eighth Amendment or due process protections. Specifically, in looking at these cases, you have to look at the facts of the cases. Both Stolvi-Granis and Meraz did not consider lighting and the inmate did not allege sleep deprivation. So these are completely different cases and the citation to them that they give some rule about contraband watch simply is erroneous. Counsel, I have two questions for you about lower court cases. As I looked at the briefs, it does appear that there are some district courts that have addressed questions of lighting. And some of them have tried to distinguish Keenan. So first question is, can we rely on – can the State officials rely on cases from out of circuit in light of Keenan? And number two, can they rely on cases from either within the circuit or without of the – outside the circuit if those cases are unpublished decisions? Your Honor, in the context of qualified immunity, the correct order would be to look first to U.S. Supreme Court cases, then to the cases of this circuit, then to district court cases and cases outside of this circuit. What do we do when we have cases inside the circuit and outside the circuit? May the jail officials look to out-of-circuit cases? And two, can they look at those cases, inside or outside the circuit, if those cases are unpublished opinions? Your Honor, well, looking to cases outside of the circuit, when we have something like Keenan, that has a clear rule that this is clearly established. Even if those cases mention Keenan and address it and then try to distinguish it, can the prison officials rely on that or not? They can – well, in those cases that dealt with dimming of the lights, they could know that dimming the lights here might have been a proper security precaution. Not all the cases deal with dimming. Some of them do. Some of them don't. Well, some of them also deal with inmates who don't allege any psychological or physical harm. However, they could look to those cases. But what we have is Keenan, and that they can't deprive of sleep. And here, the penological justification does not extend through the purpose of observation, because it wasn't necessary in order to accomplish what they were trying to accomplish when they had him shackled, and he would not be able to gain access to any contraband. Counsel, what about unpublished decisions? Unpublished decisions. Are they precedential or not? They are – we look to them in the qualified immunity analysis to see if something is clearly established. But here we have Keenan, which is the binding precedent, and it's that they can't So prison officials could look to unpublished, non-precedential decisions to decide how to conform their behavior or what policies to undertake? Yes, but the published decisions are going to govern what it is that their conduct needs to follow, and here that's Keenan. Now – Can I just change the subject a little bit? You also have a procedural due process claim, and I'm curious as to how you read Sanlin as it applies to this. Do you understand Sanlin to be saying that in order to have a procedural due process, liberty interest, you – it is necessary both to have a regulation establishing a mandatory requirement and to have an atypical and extreme deprivation or just the Senate? No, Your Honor. It's simply Sanlin here, and the only contention for due process is here is that the decision-making official who ordered Chappell to contraband watch was required at a minimum to provide him with the opportunity to present his views. And under Sanlin, this is an atypical and significant hardship. The first factor of Sanlin is whether the challenged condition mirrors those imposed upon inmates in administrative segregation. Your understanding of Sanlin is that it says regulations are from – just irrelevant. We look at these conditions as conditions and we determine whether on a Federal basis. I mean, it's a little weird because this purports to be a State-created liberty interest, but when you divorce it from the State regulations, you're looking simply at the conditions and essentially applying Federal standards, are you not? Correct, Your Honor. Yeah. And under Sanlin, under the first factor, the conditions here do not mirror administrative segregation. Administrative segregation is well understood and established by statute. And in ADCIG, the lights are not on for 24 hours a day. The inmates are not continuously shackled. They are able to eat their food with their hands. Here there's evidence in the record that the contraband watch Chappell was subjected to specifically was atypically severe in relation to other inmates' contraband watches. Officer Brooks said to Chappell, quote, man, this is wrong. I have sat on many potty watches and they have never treated nobody like they are treating you. Okay. Following up on Judge Burson's question, are you saying that your client has immediate access to Federal court under the Federal due process clause, the 14th section of the Federal statute, and that he has to show that there was a state-created liberty interest by virtue of some rule that limited the discretion of prison officials? No, Your Honor. He does not have to show a state-created liberty interest. However, he would meet both in this case. He would meet both. As to the state- What would the state-created liberty interest be? Well, here it would specifically be that there was a regulation at the prison that someone- What would the regulation say? The regulation would say that someone of the rank of captain or higher had to order the inmate to contraband watch. And here the only person's, it's undisputed- That would create a liberty interest in him, simply to say that someone had to order it. Your Honor, because that is the regulation, that's the due process interest. But even understanding- But where's the liberty interest? If the prison officials have absolute discretion to order this, how is the state created any liberty interest? Well, it's not absolute discretion because it has to be someone of the rank of captain or higher. What is the discretion? So it just depends upon the rank of the person? Well, yes, but there's a genuine issue of material fact as to whether someone in that rank did give the- Let me see if I can articulate my question better. You say the regulation says that a supervisory authority in the prison must make the order for contraband watch. And that regulation creates a liberty interest? Yes, Your Honor. But under Sandin specifically, that's the correct factors to apply here, and it's that it's an atypical and significant hardship in relation to administrative segregation. Thank you very much. Thank you. If you're going to fight or, particularly as a student, thank you very much for the program. Yes, indeed. Yes. I can't tell whether you have a little bit of extra time, but maybe a minimum. I think you do. So I have a question, which is, first of all, quickly, do you have a position on the question I asked about the procedural due process question? As to due process in particular, again, the prison officials would require some sort of guidance before they would be able to know that in something like contraband watch, where there's an emergent need to- I understand that, but I've asked you a conceptual question, which is, where are we with regard to Sandin? Does Sandin – my understanding is that at least this Court has understood Sandin in Mitchell v. Dupnick to say that we're just switching gears entirely and the regulations are not relevant. Do you agree with that? That is how I understand Sandin v. Conner. And in the case- And then my second question, back on the other issue, is I couldn't – are there any district court cases, Judge Biby suggested there were, but quickly looking I couldn't find them, which say the lights distinguish Keenan and don't say these were dim lights? The case that I was referring to was the one of Stell v. Granis. That was a case in which the district court considered the same procedures that took place because it was the same- But did it pay any attention to the light issue as such? The lighting was acknowledged by the Court, to my recollection, as one of the factors of the contraband watch policies. I don't recall the Court providing a lot of analysis or specifically referencing how that Keenan applied to that condition. All right. Thank you very much. Thank you very much. I thank both of you for a very useful argument in a difficult case, Chappell v. Manfill is submitted.
judges: Berzon, Bybee, Cjj Graham (S. Ohio), Dj